[No. F002067. Fifth Dist. Oct. 31, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROMERO DONACIANO NIEBLAS, Defendant and Appellant.

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Gabriel C. Vivas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOOLPERT, Acting P. J.**—Defendant has been convicted of first degree murder and assault with a deadly weapon. He appeals with the single contention that he was denied his constitutional right to an interpreter. We agree and, therefore, reverse the judgment and return the case for a new trial.

### PERTINENT FACTS

The substantive facts in this case are not at issue on this appeal and will be stated briefly. Defendant and the deceased, Manuel Ferrer, had fought

in the past. Both agreed that should they meet again, one would die. On August 20, 1982, defendant and his two friends, Jesus Mendoza and Refugio Florez, spent the day together and eventually drove to Hanford to visit friends of the defendant. While visiting these friends, defendant apparently saw Ferrer walking by with Maurillo Camacho. Defendant and his companions then drove in defendant's car to an alley where they confronted the two men. Defendant pulled out a rifle and opened fire. He killed Ferrer and wounded Camacho. Defendant was arrested and later told the police that he had done the shooting. At trial, he argued the shooting was in self-defense.

Defendant clearly needed an interpreter. The trial court appointed an interpreter to assist the defendant during trial. The court also determined that the interpreter could be borrowed from defendant to interpret for Spanish-speaking witnesses. While defense counsel noted a problem might arise if he and defendant needed to communicate, counsel also pointed out such a situation, in fact, should not be a problem because he and defendant had spent considerable time on the case. The matter was ultimately resolved when defense counsel agreed another interpreter would be procured if needed: *Defendant was not present at this discussion. Defense counsel had assured him that during the morning conference no decisions would be made affecting his rights.*

Defendant's interpreter was borrowed three times for the following prosecution witnesses: Pedro Ferrer, brother of the deceased; Camacho, the second victim; and Mendoza. Ferrer testified only to his brother's age, height and weight. Camacho identified defendant as the shooter.

Defendant contends his constitutional rights were violated when the defense interpreter was borrowed to interpret for the Spanish-speaking prosecution witnesses. Those rights alleged to have been violated include the following: The state right to a court-appointed interpreter, the state and federal rights to confrontation and effective assistance of counsel, and the state and federal due process rights to a fair trial. Defendant's appeal may be resolved on the violation of the state constitutional right to an interpreter. Protection of this right encompasses a protection for all of the aforementioned rights. (*People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198]; *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843].)

Article I, section 14, of the California Constitution provides in pertinent part: "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." The initial question is whether defendant needed an interpreter. ■ The right only arises when the accused cannot understand English. (*People* v. *Carreon, supra,*

151 Cal.App.3d at p. 567.) Defendant's inability to understand English is undisputed on this appeal.

The next question is whether defendant's right to an interpreter throughout the proceedings was violated. The California Supreme Court has recently discussed the parameters of article I, section 14, in *Aguilar*. The defense interpreter had been borrowed at trial to interpret for two prosecution witnesses. The court determined that the Constitution provides an accused the right to have an interpreter's aid "during the whole course of the proceedings." (*Aguilar, supra,* 35 Cal.3d at p. 790.) Hence, the borrowing of an interpreter was a denial of Aguilar's constitutional right.

In this case defendant's interpreter was borrowed for the testimony of three prosecution witnesses. While arguably defendant could understand the testimony being given because of pretrial discussions with defense counsel and because the witness was speaking in Spanish, he could not communicate with his attorney, nor could he "understand the instructions and rulings of the judge" or "the questions and objections of defense counsel and the prosecution." (*Ibid.*) Defendant's constitutional right to an interpreter was, therefore, denied.

Additionally, defendant did not waive his right to an interpreter. The requirements for a waiver of this right are well established. The right may not be waived by a failure to request an interpreter, nor may it be waived by acquiescence or other nonverbal conduct by the defendant. (*People* v. *Aguilar, supra,* 35 Cal.3d at p. 794; *People* v. *Carreon, supra,* 151 Cal.App.3d at p. 574.) To waive the right, a defendant must do so voluntarily and intelligently on the record. A waiver by counsel without participation by the defendant is likewise inadequate.

At trial, defense counsel verbally agreed the interpreter could be borrowed. Defendant, however, was not present during this discussion. Counsel maintained defendant gave him the right to represent his interest at the discussion. This procedure is totally inadequate to assure the waiver is sufficient. (See *Carreon, supra,* at p. 575.)

We are well aware that some uncertainty exists whether a partial denial of interpreter services mandates reversal, regardless of how insignificant the absence of the interpreter's presence may have been. In *Aguilar,* the court made no express statement of the standard of review to be applied in such cases, and omitted any reference to cases currently being cited for particular standards. In *Carreon,* this court borrowed a rule based on informed speculation, thereby protecting against reversals due to minor deviations which quite obviously could not prejudice the defendant. At oral

argument both counsel agreed circumstances may exist in which there could be no prejudice. These cases are to be resolved when they occur. One example might be the mandatory excuse of a juror during voir dire, at a time when the interpreter is absent. A more complex example might occur if, without a meaningful waiver, the court allows the defense interpreter to act as the witness interpreter while defendant testifies. In the first example the continuity of the presence of the interpreter has been interrupted; in the second there is a question whether the defendant has in fact had his interpreter taken when the interpreter becomes a witness interpreter.

We need not explore further such variations in potential prejudice, which make the standard of review of consequence. ▬▬ In this case the prejudice is obvious. The interpreter was borrowed during testimony crucial to defendant's defense. Therefore, as stated in *Aguilar*: "A reversal is required, . . ." there being no valid waiver. (*People* v. *Aguilar, supra,* 35 Cal.3d at p. 794.)

The judgment is reversed.

Hamlin, J., and Hardin, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.